FILED

2023 Jan-26  PM 04:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **KEVIN PENN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 5:22-cv-320-LCB** |
| | ) | |
| **CITY OF DECATUR, ALABAMA,** | ) | |
| **and JUSTIN RIPPEN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>OPINION & ORDER</u>

Kevin Penn brings this suit against the City of Decatur and Decatur Police Officer Justin Rippen under the Civil Rights Act of 1871, 42 U.S.C. § 1983. (Doc. 1 at 1). In sum, Penn claims that Officer Rippen arrested, retaliated, and used excessive force against him in violation of the First and Fourth Amendments. *Id.* at 5–7. Officer Rippen and the City move to dismiss Penn's claims under Federal Rule of Civil Procedure 12(b)(6). (Doc. 8 at 1); (Doc. 10 at 1). Assuming Penn's allegations are true, which the Court must do at this procedural posture,[1] Penn states facially plausible claims against Officer Rippen. But he does not state a plausible claim against the City. Thus, the Court denies Officer Rippen's motion, grants the City's motion, and dismisses Penn's claim against the City with prejudice.

---

[1] *See infra* Part I.

## I.      LEGAL STANDARD

Federal Rule of Civil Procedure 8 establishes the general standard for pleading civil claims in federal court. *Randall v. Scott*, 610 F.3d 701, 708 (11th Cir. 2010). Rule 8(a)(2) specifies that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy this standard, a claim need not contain "detailed factual allegations," but it must offer more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a complaint that fails "to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain sufficient facts, accepted as true, to assert a facially plausible claim for relief. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (per curiam). A claim is facially plausible when it raises "'a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).

## II.     BACKGROUND

The following facts, which the Court presumes are true for purposes of this opinion, come from Penn's complaint. Kevin Penn owns Star Spirits & Beverages in Decatur, Alabama. (Doc. 1 at 1). On March 15, 2020, Penn detained a suspected

shoplifter at gunpoint and called the police. *Id.* at 1–2. When officers arrived at the store, Penn claims he waived them inside, unloaded his gun, and placed it on the counter. *Id.* at 2. The officers, one of whom was Decatur Police Officer Justin Rippen, knew that Penn was the store owner and could see Penn's gun on the counter. *Id.*

After securing the suspected shoplifter, the officers drew their weapons on Penn. *Id.* They yelled at Penn about his gun, and Penn stated that "he was going to file a complaint" against the officers for their handling of the scene. *Id.* In response, Penn claims Officer Rippen punched him in the face—breaking his jaw and causing him to lose a tooth—and arrested Penn for obstructing governmental operations under Alabama law. *Id.* Following his arrest, Penn filed a complaint regarding the incident with the City of Decatur. *Id.* The City refused to investigate the incident and took no disciplinary against Officer Rippen. This suit followed.

## III.   DISCUSSION

Penn sues Officer Rippen and the City under the Civil Rights Act of 1871, 42 U.S.C. § 1983. (Doc. 1 at 5–7). Count I of Penn's complaint asserts that Officer Rippen arrested Penn in violation of the Fourth Amendment. *Id.* at 5–6. Count II alleges that Officer Rippen used excess force against Penn under the Fourth Amendment. *Id.* at 6–7. Count III maintains that Officer Rippen retaliated against Penn in violation of the First Amendment. *Id.* at 7. Lastly, embedded within Counts

I–III is a standalone municipal liability claim against the City. *Id.* at 6–7. Below, the Court considers the facial plausibility of each of Penn's claims, beginning with those against Officer Rippen.

### A.    Penn's Claims Against Officer Rippen

Penn pleads facially plausible claims against Officer Rippen. The Civil Rights Act of 1871, 42 U.S.C. § 1983, creates a private "cause of action for the deprivation of federal rights by persons acting under color of state law." *Brooks v. Warden*, 800 F.3d 1295, 1300 (11th Cir. 2015). The statute "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

One prevalent limitation on § 1983 liability is the doctrine of qualified immunity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). Qualified immunity protects public officials "from civil damages for their discretionary acts when their conduct does not violate a federal right that was clearly established at the time of the challenged action." *Luke v. Gulley*, 50 F.4th 90, 95 (11th Cir. 2022) (per curiam). The doctrine aims to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To receive qualified immunity, a police officer bears the burden to prove that "he acted within his discretionary authority." *Dukes v. Deaton*, 852 F.3d 1035, 1041 (11th Cir. 2017). Making an arrest constitutes a discretionary act for purposes of qualified immunity. *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019); *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003). If the officer meets his burden, the plaintiff may nonetheless overcome immunity by showing: (1) that the officer violated a statutory or constitutional right; and (2) that "the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

The common denominator of Penn's claims against Officer Rippen is that they arise from Penn's arrest. Accordingly, the Court finds that Officer Rippen was acting within his discretionary authority for purposes of Penn's claims. That conclusion, however, does not necessarily mean that Officer Rippen is entitled to qualified immunity. Rather, the issue remains whether Penn plausibly establishes that Officer Rippen violated a clearly established constitutional right.

### 1.   *Unlawful Arrest (Count I)*

Officer Rippen is not entitled to qualified immunity on Penn's unlawful arrest claim. The Fourth Amendment reads in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. Under the Amendment,

an arrest constitutes a seizure of the person. *California v. Hodari D.*, 499 U.S. 621, 624 (1991). An arrest is reasonable—i.e., lawful—if it is supported by probable cause. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). Probable cause to arrest "exists if the facts and circumstances known to the officer [would] warrant a prudent man in believing that [an] offense has been committed." *Henry v. United States*, 361 U.S. 98, 102 (1959).

It is clearly established that an arrest lacking "arguable" probable cause violates the Fourth Amendment's prohibition against unreasonable seizures. *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). Arguable probable cause exists when "reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] could have believed that probable cause existed." *Hardigree v. Lofton*, 992 F.3d 1216, 1225 (11th Cir. 2021) (quoting *Swint v. City of Wadley*, 51 F.3d 988, 996 (11th Cir. 1995)). Whether an officer has arguable probable cause to arrest "depends on the elements of the alleged crime and the operative fact pattern." *Brown*, 608 F.3d at 735. An officer is not entitled to qualified immunity on a false arrest claim if the arrest itself lacked arguable probable cause. *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007).

In this case, Officer Rippen arrested Penn for obstructing governmental operations" in violation of Alabama law. (Doc. 1 at 2).[2] Penn, however, did nothing to obstruct, impair, or hinder any law enforcement operations. To the contrary, Penn detained the suspected shoplifter at gunpoint until law enforcement arrived at the store. *Id.* at 1–2. Once officers arrived, Penn waived them inside, unloaded his gun, and placed it on the store counter. *Id.* at 2. The officers—including Officer Rippen—could see the gun on the counter and knew that Penn was the store owner. *Id.*

Against this backdrop, no reasonable officer in Officer Rippen's position could have believed that Penn violated Alabama's obstruction statute[3]—or committed any offense whatsoever.[4] Officer Rippen, as a result, lacked arguable

---

[2] Under Alabama law, an individual "commits the crime of obstructing governmental operations if, by means of intimidation, physical force or interference or by any other independently unlawful act, he: (1) [i]ntentionally obstructs, impairs or hinders the administration of law or other governmental function; or (2) [i]ntentionally prevents a public servant from performing a governmental function." ALA. CODE § 13A-10-2(a).

[3] It is worth noting that Alabama's obstruction statute "does not apply to the obstruction, impairment or hindrance of the making of an arrest." ALA. CODE § 13A-10-2(b). Accordingly, Officer Rippen would have lacked arguable probable cause to arrest Penn for violating the statute even if Penn had obstructed his own arrest or the arrest of the suspected shoplifter.

[4] Officer Rippen alternatively contends that he had arguable probable cause to arrest Penn for disorderly conduct. (Doc. 9 at 22–25). Under Alabama law, a person commits the offense of disorderly conduct "if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he or she does any of the following:

    (1) Engages in fighting or in violent tumultuous or threatening behavior.

    (2) Makes unreasonable noise.

    (3) In a public place uses abusive or obscene language or makes an obscene gesture.

    (4) Without lawful authority, disturbs any lawful assembly or meeting of persons.

    (5) Obstructs vehicular or pedestrian traffic, or a transportation facility.

probable cause to arrest Penn. Accordingly, Officer Rippen violated Penn's clearly established Fourth Amendment right to be free from an arrest lacking arguable probable cause. Officer Rippen is therefore not entitled to qualified immunity on Penn's unlawful arrest claim.

### 2.      *Excessive Force (Count II)*

Officer Rippen is not entitled to qualified immunity on Penn's excessive force claim. The Fourth Amendment's right to be free from unreasonable seizures also protects against the use of excessive police force during an arrest. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam). Fundamentally, any amount of police force during an *unlawful* arrest runs afoul to the Fourth Amendment. *Reese v. Herbert*, 527 F.3d 1253, 1272 (11th Cir. 2008). But not every false arrest claim gives rise to an independent excessive force claim. *See Williamson v. Mills*, 65 F.3d 155, 158–59 (11th Cir. 1995) (per curiam). For instance, "a claim that *any* force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000) (emphasis added).

---

(6) Congregates with other person in a public place and refuses to comply with a lawful order of law enforcement to disperse.

ALA. CODE § 13A-11-7(a). Here, nothing in Penn's complaint suggests that Penn engaged in fighting or threatening behavior, made unreasonable noise, used abusive or obscene language or gestures, disturbed any assembly, obstructed traffic or a transportation facility, or refused to comply with a police order. Thus, based on face of Penn's complaint, Officer Rippen lacked arguable probable cause to arrest Penn for disorderly conduct under Alabama law.

The rationale for this rule is largely twofold. First, an unlawful arrest claim includes "damages for any injury, pain and suffering, and mental anguish caused by the force used to effect that false arrest, regardless of whether the force would have been reasonable or excessive had there been probable cause." *Turner v. Jones*, 415 F. App'x 196, 201 (11th Cir. 2011) (per curiam). Second, an excessive force claim, when properly plead, "presents a discrete constitutional violation" that "is independent of whether law enforcement had the power to arrest." *Bashir v. Rockdale Cnty.*, 445 F.3d 1323, 1332 (11th Cir. 2006).

Accordingly, a plaintiff cannot plead a plausible excessive force claim by alleging merely that his arrest was unlawful and therefore any force used against him was likewise unlawful. *Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022). Rather, he must allege facts presenting a "discrete constitutional violation relating to the manner in which an arrest was carried out," and those allegations must be independent from any claim that his arrest was unlawful. *Alston v. Swarbrick*, 954 F.3d 1312, 1320 (11th Cir. 2020) (quoting *Bashir*, 445 F.3d at 1332).

Penn does not base his excessive force claim merely on his claim that his arrest was unlawful. He instead alleges that Officer Rippen punched him in the face during the course of his arrest and that such conduct was unreasonable under the circumstances. (Doc. 1 at 2). Accordingly, as a threshold matter, Penn's excessive force claim is not subsumed in his false arrest claim. With that conclusion in mind,

the Court turns to whether Penn plausibly establishes that Officer Rippen violated his Fourth Amendment right to be free from excessive force and whether that right was clearly established at the time of his arrest.

Whether a quantum of force violates the Fourth Amendment—i.e., is unreasonably excessive—depends on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). It is clearly established that force is unreasonably excessive when it is so "grossly disproportionate to any threat posed" that any reasonable officer in the defendant's circumstances "would have recognized that his actions were unlawful." *Oliver v. Fiorino*, 586 F.3d 898, 907–08 (11th Cir. 2009); *accord Corbitt v. Vickers*, 929 F.3d 1304, 1317 (11th Cir. 2019) (collecting cases).

In this case, Officer Rippen arrested Penn for obstructing governmental operations[5]—a nonviolent, misdemeanor.[6] Accordingly, the offense at issue was hardly a severe one. Nothing in Penn's complaint suggests that he actively resisted arrest or attempted to flee the scene. Additionally, Penn posed no threat to anyone at the time of his arrest. He unloaded his gun and placed it on the store counter when

---

[5] (Doc. 1 at 2).

[6] ALA. CODE § 13A-10-2(c) (defining obstructing governmental operations as a Class A misdemeanor).

officers arrived on the scene. (Doc. 1 at 2). The officers knew Penn was the store owner and could see his gun on the counter. *Id.* Nevertheless, Officer Rippen punched Penn in the face, breaking Penn's jaw and causing him to lose a tooth. *Id.*

Considering these circumstances alongside the facts in question as a whole, the Court finds that the amount of force Officer Rippen used against Penn was so grossly disproportionate to the needs of Penn's arrest that any reasonable officer in Officer Rippen's position would have recognized that his actions were unlawful under the Fourth Amendment. Accordingly, Officer Rippen violated Penn's Fourth Amendment right to be free from excessive police force during an arrest. Because that right was clearly established at the time of Penn's arrest, Officer Rippen is not entitled to qualified immunity on Penn's excessive force claim.

### 3.    *Unlawful Retaliation (Count III)*

Officer Rippen is not entitled to qualified immunity on Penn's unlawful retaliation claim. The First Amendment provides not only a right to speak, but also a right to be free from government retaliation for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006).[7] To state a First Amendment retaliation claim, a plaintiff must demonstrate three things: "(1) he engaged in protected speech; (2) the defendant's conduct adversely affected the protected

---

[7] The First Amendment reads in relevant part: "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. CONST. amend. I.

speech; and (3) a causal connection exists between the speech and the defendant's retaliatory actions." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016).

Protected speech includes verbal opposition and criticism directed at police officers. *City of Houston v. Hill*, 482 U.S. 451, 462–63, 463 n.12 (1987). Arresting, or even threatening to arrest, someone for engaging in protected speech constitutes an adverse effect on the speech itself. *Andrews v. Scott*, 729 F. App'x 804, 812 (11th Cir. 2018) (per curiam). In sum, it is clearly established that the First Amendment proscribes arresting someone for engaging in constitutionally protected speech, such as verbally opposing or criticizing police conduct. *Ga. Ass'n of Educators v. Gwinnett Cnty. Sch. Dist.*, 856 F.2d 142, 145 (11th Cir. 1988); *Lambert v. Herrington*, 2022 WL 2345769, at *6 (11th Cir. June 29, 2022) (per curiam); *see also Hill*, 482 U.S. at 462–63 ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.").

In this case, Officer Rippen punched and arrested Penn immediately after Penn stated he was going to file a complaint against Officer Rippen and his fellow officers for their handling of the scene. (Doc. 1 at 2). Penn's statement, in effect, was verbal criticism of police conduct and therefore constitutionally protected speech under the First Amendment. Officer Rippen's conduct—punching and arresting Penn—had an adverse impact on and was causally related to Penn's protected

speech. Accordingly, Officer Rippen violated Penn's clearly established First Amendment right to be free from arrest in retaliation for constitutionally protected speech. Officer Rippen is therefore not entitled to qualified immunity on Penn's retaliation claim.

### B.      Penn's Claim Against the City

Penn fails to plead a facially plausible claim against the City. The bar for establishing "municipal liability is very high." *Simmons v. Bradshaw*, 879 F.3d 1157, 1169 (11th Cir. 2018). To hold a municipality liable under § 1983, a plaintiff must prove three things: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). As explained *supra* Section III.A, Penn pleads a plausible violation of his First and Fourth Amendment rights. Be that as it may, Penn does not come close to plausibly establishing that the City had a custom or policy that constituted deliberate indifference to his rights.

There are several ways to demonstrate a municipal policy or custom for purposes of § 1983 liability. One way is to prove that inadequate police training constituted a "deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Under the failure-to-train theory, a "pattern of similar constitutional violations" is "'ordinarily

necessary' to demonstrate" a municipal policy or custom. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Evidence of a single constitutional violation suffices only where there is also a showing that the municipality "failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997).

Another way to demonstrate a municipal policy or custom is to produce evidence that "a police department has 'persistent[ly] fail[ed] to take disciplinary action against officers'" for similar constitutional violations, thereby ratifying the misconduct. *Underwood v. City of Bessemer*, 11 F.4th 1317, 1334 (11th Cir. 2021) (quoting *Salvato v. Miley*, 790 F.3d 1286, 1297 (11th Cir. 2015)). A pattern of constitutional violations is generally necessary to show ratification. *Simmons*, 879 F.3d at 1168–69. A single incident is sufficient only where municipal "policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis." *Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1174 n.12 (11th Cir. 2001), *cert. granted, judgment vacated sub nom. Thomas v. Roberts*, 536 U.S. 953 (2002), *and opinion reinstated*, 323 F.3d 950 (11th Cir. 2003).

Penn attempts to proceed under the failure-to-train and ratification theories. (Doc. 1 at 3–4). First, he claims that the City failed to train officers "regarding the limited circumstances in which it is appropriate to charge persons with obstructing

governmental operations and other charges that are subject to abuse by officers." *Id.*
Second, Penn claims that, prior to the violation of Penn's rights, the City "ratified a
pattern and practice of": (1) refusing to investigate complaints of police misconduct;
and (2) failing to discipline or prosecute known incidents of police misconduct. *Id.*
at 4.

Penn alleges no facts to support his allegations. Instead, he asserts broadly
that "[i]t is well known in the Decatur legal community" that Decatur police often
baselessly charge individuals with "obstructing governmental operations, disorderly
conduct, and resisting arrest." *Id.* at 3. Penn goes on to state that "City policymakers
were aware of numerous incidents in which citizens were subjected to
unconstitutional stops, searches, arrests, and uses of force but took no action to
investigate and discipline officers." *Id.* at 4. These allegations are little more than
legal conclusions, threadbare recitations of the elements of a cause of action.
Accordingly, Penn fails to state a facially plausible claim against the City.

## IV.   CONCLUSION

Penn pleads facially plausible claims against Officer Rippen under 42 U.S.C.
§ 1983. Penn does not plead a facially plausible § 1983 claim against the City. For
these reasons, the Court **DENIES** Officer Rippen's motion to dismiss (Doc. 8),
**GRANTS** the City's motion to dismiss (Doc. 10), **DISMISSES** Penn's claim
against the City with prejudice, and **TERMINATES** the City as a party to this suit.

The Court also **LIFTS** the stay of this case (Doc. 24) and **ORDERS** Penn and Officer Rippen to file a Rule 26(f) Report by February 10, 2023.

Finally, the Court would be remiss if it did not acknowledge that Officer Rippen's bodycam footage tells a largely different story of the incident than Penn's complaint.[8] As explained in a separately-filed order, the Court declines to consider the bodycam footage at this procedural posture because Penn did not mention the footage in his complaint. (Doc. 26 at 3–4). That said, the Court may consider the footage at later time should Officer Rippen move for summary judgment and make the footage part of the evidentiary record.

    **DONE** January 26, 2023.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE

---

[8] The bodycam footage is attached to Defendants' motions to dismiss. (Doc. 12 at 1).